IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KEITH E. SCHULZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-0197-CV-W-ODS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying his application for disability benefits . The Commissioner's decision is affirmed.

I.  BACKGROUND

Plaintiff was born in February 1955 and has a high school education.  He has prior work experience as a self-employed residential painter, assembler, time-keeping clerk, warehouse worker, mechanic, and delivery driver.  His most recent work was as a painter.  In October 2001, Plaintiff began experiencing severe abdominal pains that were eventually diagnosed as pancreatitis.  Plaintiff was treated by Dr. Sharon Prohaska.  On May 1, 2002, Dr. Prohaska's notes indicate Plaintiff's ultrasound was clear, he felt "a lot better," and he "rarely" used his pain medications – but Plaintiff reported being unable to work.  Dr. Prohaska's indicated Plaintiff's pancreatitis was "resolved" and that Plaintiff would return to work part-time in May (although he reported difficulty lifting paint cans and being around paint fumes).  R. at 177.  On August 6, 2002, Dr. Prohaska noted Plaintiff's pancreatitis "still acts up now and again."  Plaintiff reported he had returned to work half time, but was unable to work a full day "due to weakness and breathing paint fumes."  R.

at 176. In September 2002, Plaintiff reported an increase in abdominal pain, but "not as severe as it used to be." R. at 174. In late 2002, Dr. Prohaska prescribed "pain patches for Plaintiff's use, and on November 3, 2002, Plaintiff reported the "[p]atches are working great!" R. at 172. Shortly thereafter, Plaintiff reported increased episodes of pancreatitis and a corresponding inability to work. R. at 170-71. In February 2003 Plaintiff reported he felt "good in general except for occ[asional] pancreatitis." R. at 169. He also reported no recent episodes. R. at 210. In doctor visits from March 2003 through February 2004, Plaintiff reported intermittent abdominal pain, positive effects of medication, and no side effects from the medication. R. at 201-09.

In May 2004, Plaintiff reported increased pain and observed that he "used to be able to eat McDonalds without pain but can't now." R. at 199. At some point in time, Plaintiff was instructed to adhere to a low-fat diet. R. at 234. The Court will assume, for the sake of discussion, this instruction came during or after the May 2004 appointment with Dr. Prohaska; to conclude otherwise would indicate Plaintiff failed to follow the doctor's dietary instructions to avoid fatty foods. During his next visit to Dr. Prohaska, Plaintiff reported his medication provided "adequate pain control" with "no side effects." R at 198. On September 7, 2004, Dr. Prohaska wrote a letter declaring Plaintiff is unable to work because "his medications were making him sedated and the pain in his hips [is] such that he [is] unable to climb ladders and carry paint buckets. Paint fumes make him nauseated." R. at 214.

Plaintiff also complained of pain in his hips. In March 2003, Plaintiff was referred to an orthopedist, who initially suspected Plaintiff suffered from avascular necrosis. R. at 197. A subsequent MRI disproved this theory, and left the orthopedist without "a good answer or explanation." R. at 196; see also R. at 211-12. During the hearing, Plaintiff reported the orthopedist told him he suffered from arthritis. R. at 226. Plaintiff's counsel also told the ALJ that the MRI "came back relatively normal" and the focus of Plaintiff's disability claim was his pancreatitis. R. at 227.

Plaintiff testified he last worked in October 2001, which is when he experienced his first pancreatitis attack. He subsequently attempted to work on a couple of occasions,

2

but could not do so. R. at 224-25. Plaintiff explained that paint fumes exacerbated his condition, R. at 236, and Dr. Prohaska's contemporaneous notes confirm Plaintiff reported this fact to her. He experiences pain approximately two to four times per week, with each episode lasting four to eight hours. R. at 229, 232-33. The pain is of such intensity that he is essentially nonfunctional. R. at 233. The attacks occur (when they occur) only after he eats; consequently, he has adjusted his habits so that he eats only one meal a day, and that is in the evening. R. at 229. He described his daily activities as consisting of sitting and being comfortable, although he does work in the yard. R. at 229-30. He indicated difficulty sleeping, but attributed that problem to his back and hip, not to the pancreatitis or his medication. R. at 233.

The ALJ solicited testimony from a Vocational Expert ("VE"). When asked a hypothetical question assuming a person of Plaintiff's age, education, and work experience who had the ability to lift no more than twenty pounds occasionally and ten pounds frequently, could sit and stand for six hours in an eight hour day, had limited ability to reach with his left (non-dominant) arm, and needed to avoid exposure to fumes, dust, and other environmental contaminants. The VE indicated such an individual could not perform any of their past relevant work except for the position of time-keeping clerk. R. at 239. Upon further questioning, the VE indicated such a person could also perform other work in the national economy, including general office clerk, postal clerk, or investigator/adjustor. R. at 239-40. Plaintiff's counsel added to the hypothetical, adding the existence of abdominal pain two to four times a week for approximately six hours that would require a period of inactivity. The VE stated that according to Plaintiff's "testimony he seems to be controlling the pain by only eating a meal at night. While the pain might interfere with his sleep it wouldn't seem to affect a daytime job. So I would say the clerk position would still be available." R. at 241. Plaintiff's counsel modified the hypothetical further, asking the VE to assume the claimant's sleep was affected to a point that he would have one or two unscheduled absences per month. The VE indicated this would be acceptable, and that three or more absences per month would be acceptable to employers. R. at 242.

3

The ALJ found Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk six hours in an eight hour day, sit for six hours in an eight hour day, had limited ability to use his left (non-dominant) arm for pushing, pulling and reaching, and needed to avoid exposure to fumes and environmental irritants. The ALJ further found Plaintiff remained able to perform his past work as a time-keeping clerk. R. at 22.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

4

> The absence of an objective medical basis which supports the
> degree of severity of subjective complaints alleged is just one factor to be
> considered in evaluating the credibility of the testimony and complaints. The
> adjudicator must give full consideration to all of the evidence presented
> relating to subjective complaints, including the claimant's prior work record,
> and observations by third parties and treating and examining physicians
> relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective
> complaints solely on the basis of personal observations. Subjective
> complaints may be discounted if there are inconsistencies in the evidence
> as a whole.

739 F.2d at 1322 (subsequent history and internal citations omitted). Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996). Further, an ALJ does not have to discuss each Polaski factor as long as the analytical framework is recognized and considered. Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004).

Plaintiff contends the ALJ failed to properly ascertain his credibility and his residual functional capacity. The Court disagrees. Nothing in the record suggests Plaintiff is unable to sit, stand, walk, or lift in the manner found by the ALJ. Dr. Prohaska indicated Plaintiff could not climb ladders or be near fumes, and these limitations were credited by the ALJ. Dr. Prohaska's indication Plaintiff could not work is not a medical opinion and is not entitled to deference; moreover, as the ALJ suggested, Dr. Prohaska's opinion merely suggests Plaintiff cannot work as a house painter, R. at 20, and the ALJ concluded Plaintiff could not return to this job. Plaintiff did not report drowsiness, inability to sleep, or any other side effects to Dr. Prohaska. Plaintiff also did not report limitations

5

in his ability to sit or stand to the degree he described in his testimony.  Plaintiff reported that when pancreatitis attacks occurred they occurred only after eating, and he had limited himself to one meal in the evening; consequently, pancreatitis attacks did not occur during normal working hours.  Finally, Dr. Prohaska's notes indicate the attacks were fairly well-controlled with medication.

Given the state of the record, the ALJ was justified in discounting Plaintiff's credibility and in assessing his residual functional capacity.  The Court shares Plaintiff's concern about the ALJ's discussion of Plaintiff's attempts to return to work; Plaintiff divulged information about his work attempt in response to the ALJ's very first question about his work history.  R. at 224.  In response to the very next question, Plaintiff added further explanation about his efforts in 2002.  R. at 224-25.  The ALJ overstated matters when it described Plaintiff as "less than forthright."  Nonetheless, the record supports the Commissioner's decision because the record does not contain evidence demonstrating Plaintiff's residual functional capacity is more limited than that found by the ALJ.

Plaintiff also argues the ALJ failed to consider the particular demands of his job as a time-keeping clerk.  To the contrary, information about these jobs was contained in the record, R. at 93-95, and the VE testified about Plaintiff's past performance in this position as well as his ability to do the work at present.  R. at 238-39.  It should also be noted Plaintiff has not identified anything in the record that suggests he performed this job in a manner differently than he described on the forms contained in the record.

### III.  CONCLUSION

For these reasons, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: October 18, 2005  UNITED STATES DISTRICT COURT